Sylvester, J.
The findings of fact have been passed upon and signed contemporaneously herewith. This memorandum is intended to point out the persuasive evidentiary factors which affect a determination of the best use of the appropriated property. In essence, there is a substantial variance in value of the taken portion depending on whether the property is feasible for an apartment house project as its best use or is required to be confined to one or two one-family residential structures. Affecting its best use is a right of way reserved to the owner at the time the New York City aqueduct, which bisected the owner’s land (parcels 1 and 2), was constructed in 1910. The instant claim is limited to the value of the 6.44 acres taken which lie east of the aqueduct and designated as parcel 2. The remainder of claimant’s property, located west of the aqueduct, is designated as parcel 1. There is no claim here for consequential damages. The case presents conflicting claims as to the location and dimensions of the reserved right of way which does not appear to have been definitely delineated in the city’s condemnation proceeding. The area and location of the right of way considered together with any limitation upon the free *944 and unrestricted exercise of the easement materially affect the extent of the damage to be awarded. For that reason there is here set forth a more detailed resumé of the factors which persuade a finding of the so-called “ S ” pathway as the owner’s right of way across the aqueduct, rather than the perpendicular forty-five-foot right of way as contended by claimant. It is claimant’s contention that a forty-five-foot perpendicular right of way is calculated to permit the building of a substantial road across the aqueduct, sufficient to accommodate heavier traffic. Such a road, it is evident, would be indispensable to the construction of an apartment house project. However, the evidence suggests many obstacles in the way of its accomplishment, particularly difficulties of a governmental character stemming from a concern with respect to the safety of the aqueduct. Whether these many difficulties could be resolved satisfactorily so as to permit the wider right of way and what costs would thereby be entailed are, among many other pertinent considerations, not adequately dealt with in the record. In any event, the record rejects a finding of a right of way as urged by claimant. Access to the subject property (parcel 2) is by way of a narrow, irregular, winding “ S ” shaped pathway leading from claimant’s property on the west, parcel 1, across a New York City aqueduct in a northeasterly direction to parcel 2. The width of said right of way or crossover is twelve feet six inches at its westerly terminus, thirteen feet four inches at its easterly terminus, and twenty-four feet at its widest point.
It is the position of the State that this “ S ” shaped pathway . represents the right of way reserved to claimant by the City of New York and that the location and dimensions of said right of way were established in the construction of the Catskill aqueduct, by the erection of a wire fence, supported upon concrete posts on either side of said right of way. On the other hand, the claimant urges that the right of way reserved was forty-five feet wide in a straight course perpendicular to the aqueduct. Obviously, the location and area of the right of way become important because of its value to the subject property in respect of its uses. It must be said at the outset that the evidence both documentary and oral compels the conclusion that the right of way reserved to the owner is the so-called “ S ” shaped pathway. It is the only means of access to the taken portion of the property and is referred to and described as the right of way in claimant’s own deed. The claim of a right of way forty-five feet wide purporting to be a physical straight-line course perpendicular to the aqueduct is not established. It rests upon an inspection of Exhibit 18, the Condemnation Map *945 of the City of New York, which depicts a right of way at another portion of the property. However, claimant’s own engineer witness, reading the map, explained that it merely indicates that a right of way was to be granted without purporting to locate it or to yield its dimensions. This view is fortified by the testimony of the chief of the real estate division of the department of water supply of the City of New York, who stated that the exhibit’s only function was to indicate that a right of way would be granted. Claimant also argues that certain gateposts upon the property forty-five feet apart represent the width of the intended right of way — but the chief of the real estate division of the department of water supply of the City of New York explained that the gateposts had no relationship to the right of way; that the posts had supported gates which were designed to prevent vehicular traffic from proceeding upon the aqueduct; and that gates of this character were placed at various intervals along the aqueduct for the same purpose and not for the purpose of determining boundaries of' crossovers or rights of way. Moreover, it adequately appears from claimant’s own deed when read together with the Springsteel Survey that a forty-five-foot wide right of way with a straight-line course perpendicular to the aqueduct would be impossible and, therefore, fail to conform to the terms of .the deed which required access over a common right of way with the adjacent owner along the boundary line of the two properties (i.e., the topography of the area would not lend itself to such designor formula). The obvious conclusion to be drawn from all the evidence is that the reserved right of way is the “ S ” pathway which, among other farm purposes, enabled the owner’s cattle to proceed to and from his farm on both sides of the aqueduct. This makes for a logical and understandable need for such right of way at the time of the grant.